UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLTON INTERNATIONAL EXPRESS
WELLTON EXPRESS INC,

                Plaintiffs,

- against -

BANK OF CHINA (HONG KONG),
JP MORGAN CHASE BANK,
WELLS FARGO BANK PLC and JOHN DOE
and/or JANE DOE 1 THROUGH 10,

                Defendants.

Civil Action No.: 19 cv 6834 (JPO)

---

# MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO BANK'S MOTION TO DISMISS THE COMPLAINT

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS AND ALLEGATIONS OF THE
      COMPLAINT .................................................................................... 3

ARGUMENT .............................................................................................................. 5

POINT I     PLAINTIFFS' CLAIM THAT WELLS FARGO
            WRONGFULLY ACCEPTED THE WIRE TRANSFER IS
            PRECLUDED BY UCC § 4-A-207 ............................................... 5

     A.    Plaintiffs' Wire Transfer Claims Are Governed by Article
           4-A of the UCC ..................................................................... 6

     B.    Parties to the Wire Transfer Transactions .................................... 7

     C.    Plaintiffs' Claims Are Precluded by UCC § 4-A-207 ................. 9

POINT II    PLAINTIFFS' COMMON LAW CLAIMS NOT ONLY
            ARE PRECLUDED BY UCC ARTICLE 4-A, BUT ALSO
            FAIL ON THEIR OWN AS A MATTER OF LAW ............... 12

     A.    Plaintiffs' Breach of Contract Claim Fails ............................... 12

          1.    Plaintiffs are Not Third-Party Beneficiaries to the
                Agreement(s) Between the Bank Defendants .................. 13

          2.    The Conversation Between a Wells Fargo Employee
                and Express Did Not Create a Valid Oral Agreement ..... 15

     B.    Plaintiffs' Negligence Claim Also Fails .................................... 17

POINT III   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS
            AGAINST WELLS FARGO .................................................... 18

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

Ancile Inv. Co. v. Archer Daniels Midland Co.,
784 F. Supp. 2d 296 (S.D.N.Y. Mar. 8, 2011) ......... 14

Banque Worms v. BankAmerica Int'l.,
77 N.Y.2d 362 (1991) ......... 7

Century Bus, Credit Corp. v. North Fork Bank,
246 A.D.2d 395, 668 N.Y.S.2d 18 (1st Dep't 1998) ......... 18

Computech Intern., Inc. v. Compaq Computer Corp.,
2002 WL 31398933, 2002 U.S. Dist. LEXIS 20307
(S.D.N.Y. Oct. 24, 2002) ......... 16

Empire City Capital Corp. v. Citibank, N.A.,
2011 WL 4484453, 2011 U.S. Dist. LEXIS 110543
(S.D.N.Y. Sept. 28, 2011) ......... 17

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,
375 F.3d 168 (2d Cir. 2004) ......... 13

Fashion One TV LLC v. Fashion TV Programmgesellschaft MBH,
2017 WL 3610513, 2017 U.S. Dist. LEXIS 134097
(S.D.N.Y. Aug. 21, 2017) ......... 14-15

Frankel-Ross v. Congregation Ohr Hatalmud,
2016 WL 4939074, 2016 U.S. Dist. LEXIS 128342
(S.D.N.Y. Sep. 13, 2016) ......... 19

Golden Door V. & I, Inc. v. TD Bank,
123 A.D.3d 976, 999 N.Y.S.2d 510 (2d Dep't 2014) ......... 6

Grain Traders, Inc. v. Citibank, N.A.,
160 F.3d 97 (2d Cir. 1998) ......... 5, 7, 14, 19

Grayson v. Ressler & Ressler,
271 F. Supp. 3d 501 (S.D.N.Y. Sept. 18, 2017) ......... 16

Johnson v. Chase Manhattan Bank,
2000 U.S. Dist. LEXIS 5587 (S.D.N.Y. April 27, 2000) ......... 18

Kafati v. Wells Fargo Bank,
2018 NY Slip Op 31744(U), 2018 WL 1638801, 2018 N.Y. Misc.
LEXIS 3197 (N.Y. Cty. Sup. Ct. 2018) ......... 11

Kunica v. St. Jean Financial, Inc.,
    1998 WL 437153, 1998 U.S. Dist. LEXIS 11867 (S.D.N.Y. Aug. 3, 1998) ........... 16

Levin v. JPMorgan Chase Bank, N.A.,
    751 Fed. Appx. 143, 2018 WL 4901585, 2018 U.S. App.
    LEXIS 28403 (2d Cir. 2018) ........................................................................... 5

Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    597 F.3d 84 (2d Cir. 2010) .............................................................................. 7

MRF Resources v. Merchants Bank,
    222 A.D.2d 355, 636 N.Y.S.2d 26 (1st Dep't 1995) ....................................... 7

Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.,
    261 F.R.D. 13 (S.D.N.Y. Mar. 31, 2009) ...................................................... 18

Oscar Prods. v. Zacharius,
    893 F. Supp. 250 (S.D.N.Y. June 28, 1995) .................................................. 15

Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.,
    2011 WL 2532914, 2011 U.S. Dist. LEXIS 67871
    (E.D.N.Y. June 23, 2011), aff'd 457 Fed. Appx. 40, 2012
    WL 232969 (2d Cir. 2012) ............................................................................ 19

Phil & Kathy's, Inc. v. Safra Nat'l Bank of N.Y.,
    595 F. Supp. 2d 330 (S.D.N.Y. 2009) ............................................................ 7

Renner v. Chase Manhattan Bank,
    1999 WL 47239, 1999 U.S. Dist. LEXIS 978 (S.D.N.Y. Feb. 3, 1999) ........... 17-18

Sel-Leb Marketing, Inc. v. Dial Corp.,
    2002 WL 1974056, 2002 U.S. Dist. LEXIS 15932
    (S.D.N.Y. Aug. 27, 2002) ......................................................................... 13, 17

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F.2d 114 (2d Cir. 1991) .......................................................................... 18

Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA,
    2017 WL 6539843, 2017 U.S. Dist. LEXIS 211169
    (N.D. Cal. Dec. 18, 2017) ............................................................................. 11

Sony Fin. Servs., LLC v. Multi Video Group, Ltd.,
    2003 WL 21396690, 2003 U.S. Dist. LEXIS 10058 (S.D.N.Y. June 17, 2003) ..... 16

Swan Media Group, Inc. v. Staub,
    841 F. Supp. 2d 804 (S.D.N.Y. Jan. 17, 2012) ........................................... 16

Tray-Wrap, Inc. v. Veneman,
    2004 WL 2346619, 2004 U.S. Dist. LEXIS 20895
    (S.D.N.Y. Oct. 15, 2004) ...................................................................... 16-17

Tzaras v. Evergreen Int'l Spot Trading, Inc.,
    2003 WL 470611, 2003 U.S. Dist. LEXIS 2550
    (S.D.N.Y. Jan. 25, 2003) ........................................................ 10-11, 17-18

Vista Food Exch. Inc. v. BenefitMall,
    138 A.D. 3d 535, 31 N.Y.S.3d 9 (1st Dep't 2016) ................................... 17

Winston v. Mediafare Entertainment Corp.,
    777 F.2d 78 (2d Cir. 1985) ....................................................................... 15

## **Statutes**

CPLR 312-a ...................................................................................................... 4

UCC § 4-A-102 ................................................................................................. 6

UCC § 4-A-103 ............................................................................................. 7, 8

UCC § 4-A-104 ......................................................................................... 6, 7, 8

UCC § 4-A-108 ................................................................................................. 6

UCC § 4-A-207 ........................................................................................ *passim*

UCC § 4-A-209 ............................................................................................ 9, 11

UCC § 4-A-404 ..................................................................................... 2, 3, 4, 11

UCC § 4-A-405 ............................................................................................... 10

UCC § 4-A-503 ............................................................................................... 10

## PRELIMINARY STATEMENT

There are two plaintiffs in this case, neither is a customer of Wells Fargo Bank, N.A. ("Wells Fargo")[1] and neither has standing or a viable claim against Wells Fargo.

Plaintiffs allege they were defrauded because an unknown hacker caused Plaintiff Wellton International Express ("International") to direct its bank to make a wire transfer to a specific account at Wells Fargo identified by its account number. Wells Fargo accepted the wired funds for deposit to its customer's account, and its customer withdrew the funds. Wells Fargo did nothing wrong – it did exactly as plaintiff International directed by complying with the instructions International gave to its bank. While plaintiffs' complaint does not mention Article 4-A of the Uniform Commercial Code, this article governs the wire transfer at issue in this case. Section 207 of Article 4-A of the Uniform Commercial Code provides immunity to Wells Fargo for accepting a wire transfer and crediting its proceeds to the customer identified by its account number. Article 4-A of the UCC also displaces the common law causes of action asserted by plaintiffs.

Plaintiff Wellton Express Inc. ("Express") claims to be the intended beneficiary of the wire transfer. Unfortunately for plaintiffs, International's email

---

[1] Plaintiffs erroneously sued an unknown entity it called "Wells Fargo Bank PLC" as defendant, rather than name the retail bank, Wells Fargo Bank, N.A., which accepted the disputed wire transfer funds and credited them to the specified account number. If Wells Fargo's motion is granted, plaintiffs' error will become moot. (Otherwise, a substitution would be appropriate.)

account was allegedly hacked by a fraudster, who – by impersonating Express – instructed International to wire funds to an alleged fraudster's account at Wells Fargo. Express never possessed or received the funds at issue and – like International – has no relationship with Wells Fargo, contractual or otherwise. It is black letter law that a bank owes no duty to non-customers (i.e., both plaintiffs) to protect them from being defrauded by a bank's customer. Thus, plaintiffs' common law claims against Wells Fargo alleging breach of contract and negligence (besides being preempted by the UCC) also fail as a matter of law.

As Article 4-A makes crystal clear, a bank receiving wired funds directed to a specific numbered bank account has a legal duty to accept those funds and then becomes legally obliged to pay these funds to its customer. (See UCC § 4-A-404(1).)

Plaintiff Express claims – and Wells Fargo vigorously denies but will assume to be true for this motion only – that a Wells Fargo employee promised Express he will place a hold on the beneficiary's account until he verified the wire transfer. Plaintiffs' complaint does not allege that Wells Fargo's alleged notification and unilateral promise to plaintiff Express created any enforceable right or cause of action in favor of either plaintiff. And it did not. Therefore, plaintiffs' allegations against Wells Fargo fail as a result of UCC-based statutory protection and the displacement (and inapplicability of) plaintiffs' alternate common law causes of action.

## STATEMENT OF FACTS AND ALLEGATIONS OF THE COMPLAINT

Neither plaintiff maintained a bank account with Wells Fargo. Plaintiff International had an account with defendant Bank of China (Hong Kong) ("BOC"). (Compl. ¶ 2.)[2] Plaintiff Express had its account with defendant JPMorgan Chase Bank, N.A. ("Chase"). (Id.)

Express and International are freight forwarders who regularly do business with one another. (Id. ¶¶ 2-3.) In January 2019, International owed Express $152,357.61 for services provided. (Id. ¶ 3.) Express apparently was hacked and International received a fraudulent email that it believed came from Express, directing International to wire $152,357.61 to Wells Fargo account #8859 (last four digits).[3] (Id.) Although International regularly sent payments to Express's account with Chase, it apparently was not alerted to the alleged fraud by the direction to wire funds to a different account at a different bank. (Id. ¶ 2.)

International instructed its bank, defendant BOC, to wire the sum of $152,357.61 (the "Wired Funds") to the Wells Fargo account ending in 8859 (the "8859 Account"). (Id. ¶ 3.) International wired $152,357.61 (the "Wired Funds") from its

---

[2] The Complaint is annexed to the Notice of Removal, filed as Exhibit A to the Declaration of Ronald M. Neumann, dated August 15, 2019.

[3] Plaintiffs' original complaint filed in state court contained an entire 12-digit bank account number. When Wells Fargo removed the case, in compliance with applicable federal rules for filing documents, we redacted all but the final four digits of the account number.

account at BOC to the 8859 Account at Wells Fargo, using Chase as the intermediary bank. (Id.) There is no dispute that this wire transfer occurred on January 31, 2019.

A Wells Fargo employee telephoned Express, and plaintiffs allege that he spoke with someone in Express's accounting department "to verify the wire transfer." (Compl. ¶ 4.) Plaintiffs allege that Express stated it was expecting payment of $152,357.61, but the wire was fraudulent because Express did not have an account with Chase. (Id.) Plaintiffs allege that the Wells Fargo employee told Express he would place a hold on the 8859 Account until he verified the wire transfer. Plaintiffs allege that their request to defendants that the Wired Funds be sent to Express's account with Chase was not honored, and the funds were immediately withdrawn from the 8859 Account. (Id. ¶ 6.)

Plaintiffs filed their action in Supreme Court in New York County and mailed a copy of the summons and complaint to a Manhattan branch of Wells Fargo with a request, pursuant to CPLR 312-a, to accept service. Wells Fargo, through counsel, accepted service on July 3, 2019. (Dkt. No. 1.) On July 23, 2019, Wells Fargo removed this action to federal court. (Id.) This Court granted Wells Fargo (and Chase's) joint consent request to extend the time to respond to the complaint until August 15. (Dkt. Nos. 8, 10.) Plaintiffs have not moved to remand.

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIM THAT WELLS FARGO WRONGFULLY ACCEPTED THE WIRE TRANSFER IS PRECLUDED BY UCC § 4-A-207

Plaintiffs assert claims against Wells Fargo arising from a single wire transfer order placed by International and intended for plaintiff Express. Yet, surprisingly, they make no mention whatsoever of UCC Article 4-A, which governs wire transfers and precludes resort to alternate common law theories. Plaintiffs contend, without factual or legal support, in their First Cause of Action against Wells Fargo, that it wrongfully transferred the proceeds of the wire transfer. In fact, it did no such thing. Wells Fargo complied with the direction of plaintiff International – as conveyed through BOC and Chase – to credit the Wired Funds to the account that International designated by account number 8859 in its wire payment order to BOC.

It is black letter law that "Article 4-A of the U.C.C. governs the procedures, rights and liabilities arising out of commercial electronic funds transfers." Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998); see also Levin v. JPMorgan Chase Bank, N.A., 751 Fed. Appx. 143, 147, 2018 WL 4901585, 2018 U.S. App. LEXIS 28403, at *7 (2d Cir. 2018) ("Article 4-A was enacted to provide a comprehensive body of law that defines the rights and obligations that arise from wire transfers.") (internal quotation marks and citation omitted).

Plaintiff International admits it gave its bank, BOC, instructions to send the Wired Funds to the 8859 Account at Wells Fargo, and that BOC duly complied with International's direction. Wells Fargo accepted and applied the proceeds to the credit of the 8859 Account of its customer. In crediting the Wired Funds to the account designated by plaintiff International, Wells Fargo acted in accordance with the provisions of UCC § 4-A-207(2) and is thereby immunized from any liability to plaintiffs.

## A.     Plaintiffs' Wire Transfer Claims Are Governed by Article 4-A of the UCC

The wire transfer payments at issue in this case are "Funds Transfers" governed by Article 4-A of the UCC.[4] With limited exceptions not applicable here,[5] all matters concerning Funds Transfers must be decided consistently with Article 4-A. See UCC § 4-A-102. "[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." UCC § 4-A-102, Cmt. See Golden Door V. & I, Inc. v. TD Bank, 123 A.D.3d 976, 977, 999 N.Y.S.2d 510, 511-12 (2d Dep't 2014) ("[A]rticle 4-A was drafted with the intention that it set forth "a body of unique principles of law that would address every aspect of the electronic funds transfer process and define the rights and liabilities of all

---

[4]  Article 4-A-104(1) defines "Funds transfer" as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order."

[5]  Article 4-A-108, for example, excludes from the Article funds transfers governed by the Electronic Funds Transfer Act, which applies only to consumer transactions and certain remittances, neither of which are at issue in this case.

parties involved in such transfers," citing Banque Worms v. BankAmerica Int'l., 77 N.Y.2d 362, 371 (1991); MRF Resources v. Merchants Bank, 222 A.D.2d 355, 356, 636 N.Y.S.2d 26, 27, n.2 (1st Dep't 1995) (1991 adoption of 4-A's "precise and detailed rules" intended to provide a "clean slate" for parties in "unique and technologically specialized method of payment").

If a conflict arises out of a funds transfer, parties must look "first and foremost" to Article 4-A to bring and resolve their claims. Phil & Kathy's, Inc. v. Safra Nat'l Bank of N.Y., 595 F. Supp. 2d 330, 332 (S.D.N.Y. 2009); see also Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 89 (2d Cir. 2010) ("Article 4A controls how electronic fund transfers are conducted and specifies certain rights and duties related to the execution of such transactions.").

## B.   Parties to the Wire Transfer Transactions

UCC § 4-A-103(1)(b)-(e) defines the parties to a wire transfer transaction. See Grain Traders, supra, 160 F.3d at 100.

"Sender" means the person giving the instruction to the receiving bank. See UCC § 4-A-103(1)(e). "Originator" means the sender of the first payment order in a funds transfer. See UCC § 4-A-104(3). Plaintiff International is both the Originator and the Sender in this case.

BOC is the Sender's or Originator's bank. See UCC §4-A-104(4).

"Beneficiary" means the person to be paid by the beneficiary's bank. <u>See</u> UCC §4-A-103(1)(b). In this case, Wells Fargo's customer, identified in the complaint as "John Doe," is the Beneficiary.

"Beneficiary's Bank" means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order. <u>See</u> UCC § 4-A-103(1)(c). Wells Fargo is the Beneficiary's Bank.

"Receiving Bank" means the bank to which the sender's instruction is addressed. <u>See</u> UCC §4-A-103(1)(d). BOC is the Receiving Bank in this case.

"Intermediary Bank" means a receiving bank other than the Originator's bank or the Beneficiary's bank. <u>See</u> 4-A-104(2). In this case, Chase is the Intermediary Bank.

A "Payment Order" is an instruction by a Sender or Originator to a Receiving Bank to pay or cause another bank to pay a fixed or determinable amount of money to a Beneficiary under certain conditions set forth in UCC § 4-A-103(1)(a).[6]

---

[6] "Payment order" means an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary if:

(i) the instruction does not state a condition to payment to the beneficiary other than time of payment,

(ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender, and

(iii) the instruction is transmitted by the sender directly to the receiving bank or to an agent, funds-transfer system, or communication system for transmittal to the receiving bank.

UCC § 4-A-103(1)(a).

The Beneficiary Bank accepts a payment order when the "bank receives payment of the entire amount of the sender's order." See UCC § 4-A-209(2)(b). In this case, Wells Fargo accepted the Payment Order on January 31, 2019.

Summarizing, the complaint alleges plaintiff Sender International instructed Receiving Bank BOC to issue a Payment Order, through Intermediary Bank Chase, transferring the Wired Funds (the wire transfer) to Account 8859 at Beneficiary Bank Wells Fargo to pay the Beneficiary. The Beneficiary "John Doe" was the holder of Account 8859.

The complaint alleges that the Sender International was defrauded into identifying Account 8859 as the Beneficiary's account. The Complaint does not allege that Wells Fargo knew of any alleged fraud before it accepted the Wired Funds.

## C.    **Plaintiffs' Claims Are Precluded by UCC § 4-A-207**

As cases decided throughout the country demonstrate, *infra*, the fraud that allegedly ensnared plaintiff International is not uncommon, i.e., hackers mimic a bona fide vendor and trick the defrauded customer into directing payment to an account that belongs not to the intended beneficiary, but to the fraudster or an accomplice.

Wire transfers are the preferred (and ideal) medium for this type of fraud for several reasons. First, they are rapid, nearly instantaneous and are processed electronically, so that funds are accepted by the Beneficiary Bank and credited to the Beneficiary's account without human oversight or scrutiny. See UCC § 4-A-207, Cmt. 2

("The processing of the [payment] order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself.") After the funds are credited to the Beneficiary's account, the payment becomes final and the funds belong to the Beneficiary. See UCC § 4-A-405 & Cmt. 1 ("if the bank accepts the order it is obliged to pay the beneficiary"). Without the consent of the Beneficiary, the proceeds of the wire transfer may be restrained and recovered only by court order. See UCC § 4-A-503.

Recognizing the realities of modern commercial transactions, the Uniform Commercial Code, in UCC § 4-A-207(2), explicitly immunizes the Beneficiary Bank that accepts a wire transfer and credits the proceeds to the account number designated by the Sender (either by mistake or through fraud), where the bank lacks actual knowledge that the recipient's account belongs to someone other than the intended Beneficiary.[7] See Tzaras v. Evergreen Int'l Spot Trading, Inc., 2003 WL 470611, at *3-5, 2003 U.S. Dist.

---

[7] UCC § 4-A-207(2) provides:

> (2) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:

> (a) Except as otherwise provided in subsection (3), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

> (b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

LEXIS 2550, at *10-14 (S.D.N.Y. Jan. 25, 2003) (bank properly accepted wire transfer identified by account number); <u>Kafati v. Wells Fargo Bank</u>, 2018 NY Slip Op 31744(U), at *7, 2018 WL 1638801, 2018 N.Y. Misc. LEXIS 3197, at *7 (N.Y. Cty. Sup. Ct. 2018) ("banks may rely on the bank account number provided to them, unless they actually know that the name on the transfer does not correspond with the bank account number"); <u>see also</u> <u>Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA</u>, 2017 WL 6539843, at *5, 2017 U.S. Dist. LEXIS 211169, at *15 (N.D. Cal. Dec. 18, 2017) (the California Code equivalent of UCC § 4-A-207 "provides immunity to banks that process funds transfers to beneficiary account numbers identified in the transfer instructions").

The UCC's intent to immunize the Beneficiary Bank from liability to the Sender (in this case, International) is further underscored by Official Comment to UCC § 4-A-209, which provides that "[a]cceptance by the beneficiary's bank [Wells Fargo] does not create any obligation to the sender [International]." Acceptance by the Beneficiary's bank means that the Beneficiary Bank becomes liable to the beneficiary (its customer) for the amount of the order, and a bank risks consequential damages if it does not pay after demand by a Beneficiary. <u>See</u> UCC § 4-A-404(1). Thus, once Wells Fargo accepted the Wired Funds by crediting its customer, it was protected from liability to the Sender International by UCC § 4-A-207.

Plaintiffs acknowledge Wells Fargo credited the Wired Funds to the credit of the account that International designated by account number. As a result, UCC § 4-A-207(2) insulates Wells Fargo from liability. Plaintiffs' recourse is to the actual recipient

of the Wired Funds. In sum, contrary to plaintiffs' conclusory assumptions about liability, Wells Fargo acted pursuant to the UCC and is therefore immunized from any liability for following plaintiff International's instructions to credit the wire transfer proceeds to the account designated by International.

## POINT II

### PLAINTIFFS' COMMON LAW CLAIMS NOT ONLY ARE PRECLUDED BY UCC ARTICLE 4-A, BUT ALSO FAIL ON THEIR OWN AS A MATTER OF LAW

Plaintiffs assert common law causes of action against Wells Fargo in their Third Cause of Action, alleging both breach of contract and negligence claims against Wells Fargo.[8] As an overarching matter of law, plaintiffs' purported common law cause of action fails because it asserts claims for liability that are inconsistent with Article 4-A and thus are displaced as a matter of law. However, even if such a claim were permissible, plaintiffs have not pled facts sufficient to establish the existence of such claims. In sum, both theories fail as a matter of law.

### A.    Plaintiffs' Breach of Contract Claim Fails

Even if plaintiffs' breach of contract claim were not precluded by Article 4-A, they have not satisfied the elements required to state a claim for breach of contract.

---

[8]    Plaintiffs' Second Cause of Action is directed solely against the fraudster defendants identified in the caption as "John Doe and/or Jane Doe 1 through 10" and seeks treble and punitive damages against them. Therefore, this cause of action is not addressed by Wells Fargo in this motion.

For starters, plaintiffs admit they have no contract with Wells Fargo: they do not have an account with Wells Fargo and are not Wells Fargo customers.

Under New York law, a valid contract requires: "(1) the existence of a valid agreement; (2) adequate performance of the contract by plaintiff; (3) breach of the contract by the defendant; and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004). Pursuant to New York law, a valid contract exists only where there is "an offer, acceptance, and consideration, as well as a showing of a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound." Sel-Leb Marketing, Inc. v. Dial Corp., 2002 WL 1974056, 2002 U.S. Dist. LEXIS 15932, at *11 (S.D.N.Y. Aug. 27, 2002) (internal quotation marks and citations omitted).

Plaintiffs recognize in their complaint that they never entered into an agreement with Wells Fargo. Tellingly, plaintiffs admit that their only contracts were between: (1) International and BOC; and (2) Express and Chase. (Compl. ¶ 12.) Accordingly, absent a contract, plaintiffs' breach of contract claim must fail.

1.  **Plaintiffs are Not Third-Party Beneficiaries to the Agreement(s) Between the Bank Defendants**

Plaintiffs allege that Wells Fargo had a contractual relationship with Bank of China and Chase, presumably referring to the wire transfer transaction. These relationships, of course, are governed by Article 4-A of the UCC. But even if there were contractual relationships among the banks, plaintiffs are not parties to these contracts.

Plaintiffs imply in a conclusory fashion that their contractual relationship with BOC somehow imbues them with some unspecified contractual right to expect Wells Fargo to protect their assets. It just does not work that way. As the Second Circuit has unequivocally held, wire transfer parties may only sue their own bank and not every other bank in the wire transfer chain. See <u>Grain Traders v. Citibank, N.A.</u>, 160 F.3d 97, 102 (2d Cir. 1998):

> To allow a party to, in effect, skip over the bank with which it dealt directly, and to go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer.

Moreover, even if plaintiffs were to claim to be third-party beneficiaries (and even if – contrary to the Second Circuit authority of <u>Grain Traders</u> and the statutory preemption of the UCC – they could maintain such a claim), their allegations are inadequate as a matter of law. Plaintiffs cannot point to any provisions of any contract with the Sender's bank (BOC) or the Intermediary Bank (Chase) that would give them any claims against Wells Fargo. See <u>Ancile Inv. Co. v. Archer Daniels Midland Co.</u>, 784 F. Supp. 2d 296, 306 (S.D.N.Y. Mar. 8, 2011) (dismissing breach of contract claim for lack of standing where plaintiff did not allege enforceable agreement intended to benefit third-party); <u>Fashion One TV LLC v. Fashion TV Programmgesellschaft MBH</u>, 2017 WL 3610513, 2017 U.S. Dist. LEXIS 134097, at *2-3 (S.D.N.Y. Aug. 21, 2017) (dismissing

conversion claim where contractual language did not clearly evidence the parties' intent to benefit a third-party and holding that surrounding circumstances do not suffice).

However, even if a contractual claim were deemed to exist (and was not preempted by Article 4-A), plaintiffs have not alleged any breach. On the contrary, plaintiffs concede that Wells Fargo complied with the direction it received from the Sender's Bank, BOC, to credit the Wired Funds to the 8859 Account of its customer.

In sum, without a contract, and without a breach, there can be no breach of contract claim.

### 2. The Conversation Between a Wells Fargo Employee and Express Did Not Create a Valid Oral Agreement

Plaintiffs do not attempt to assert a contract claim against Wells Fargo based on the alleged statement of its employee that he would "place a hold on the wire transfer until he verifie[d] the wire transfer." (Compl. ¶ 5). Nor could they meet the heavy burden the law requires to elevate an alleged verbal statement of intention to a binding contract. See Oscar Prods. v. Zacharius, 893 F. Supp. 250, 255 (S.D.N.Y. June 28, 1995) (citing Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d Cir. 1985) ("Where an alleged contract is oral, plaintiff has a particularly heavy burden to establish objective signs of the parties' intent to be bound.").

New York law requires that "the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of

certainty." <u>Swan Media Group, Inc. v. Staub</u>, 841 F. Supp. 2d 804, 808 (S.D.N.Y. Jan. 17, 2012). "[I]f terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." <u>Id.</u>

Plaintiffs cannot meet their heavy burden of converting a purported statement of future intent into a binding contract. Everything that makes a contract a contract is lacking here – specific terms, mutual obligations, time frame for performance, the terms of performance, plaintiffs' obligations under the contract, and consideration. Thus, plaintiffs' failure to identify the essential terms of any purported contract would doom any future attempt to convert a purported promise into an enforceable agreement. <u>See</u> <u>Kunica v. St. Jean Financial, Inc.</u>, 1998 WL 437153, at *6, 1998 U.S. Dist. LEXIS 11867, at *16 (S.D.N.Y. Aug. 3, 1998) (dismissing breach of oral contract claim where "terms and conditions alleged were insufficient to establish the existence of an enforceable oral contract."); <u>Computech Intern., Inc. v. Compaq Computer Corp.</u>, 2002 WL 31398933, at *2, 2002 U.S. Dist. LEXIS 20307, at *5 (S.D.N.Y. Oct. 24, 2002) (same); <u>Grayson v. Ressler & Ressler</u>, 271 F. Supp. 3d 501, 521 (S.D.N.Y. Sept. 18, 2017) (same); <u>see also</u> <u>Sony Fin. Servs., LLC v. Multi Video Group, Ltd.</u>, 2003 WL 21396690, 2003 U.S. Dist. LEXIS 10058, at *6-7 (S.D.N.Y. June 17, 2003) (dismissing breach of contract counterclaim because movant failed to allege terms of contract, nature of breach, or that defendant actually performed under contract); <u>Tray-Wrap, Inc. v.</u>

Veneman, 2004 WL 2346619, 2004 U.S. Dist. LEXIS 20895, at *10 (S.D.N.Y. Oct. 15, 2004) (dismissing breach of contract claim where plaintiff's conclusory allegations do not state how contract was formed, its terms, or that plaintiff performed.).

The purported oral promise also would fail to qualify as a contract because it lacks the essential contractual element of mutual consideration. See Sel-Leb Marketing, Inc., supra, 2002 WL 1974056, 2002 U.S. Dist. LEXIS at *11-13 (dismissing breach of oral contract claim for lack of consideration where material terms undefined); see also Vista Food Exch. Inc. v. BenefitMall, 138 A.D. 3d 535, 536, 31 N.Y.S.3d 9 (1st Dep't 2016) (dismissing breach of oral contract claim where plaintiffs do not allege a benefit to promisor or detriment to promisee).

## B.     Plaintiffs' Negligence Claim Also Fails

Consistent with their scatter shot pleading approach, plaintiffs start their Third Cause of Action by alleging a contract claim and end by asserting negligence and breach of duty. However, plaintiffs' negligence claim directed against Wells Fargo is fatally flawed because neither plaintiff is a customer of Wells Fargo. It is well-settled in New York (and elsewhere as well) that a bank owes no duty to a non-customer to protect it from being defrauded by a bank's customer. See Tzaras v. Evergreen Int'l Spot Trading, Inc., 2003 WL 470611, at *5-6, 2003 U.S. Dist. LEXIS 2550, at *16-20 (S.D.N.Y. Jan. 25, 2003); Empire City Capital Corp. v. Citibank, N.A., 2011 WL 4484453, 2011 U.S. Dist. LEXIS 110543, at *29-31 (S.D.N.Y. Sept. 28, 2011); Renner v. Chase Manhattan Bank, 1999 WL 47239, at *13, 1999 U.S. Dist. LEXIS 978, at *40-

42 (S.D.N.Y. Feb. 3, 1999); <u>Johnson v. Chase Manhattan Bank</u>, 2000 U.S. Dist. LEXIS 5587, at *15 (S.D.N.Y. April 27, 2000); <u>Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.</u>, 261 F.R.D. 13, 27 (S.D.N.Y. Mar. 31, 2009); <u>Century Bus. Credit Corp. v. North Fork Bank</u>, 246 A.D.2d 395, 396, 668 N.Y.S.2d 18, 19 (1st Dep't 1998).

Moreover, the <u>Tzaras</u> case is precisely on point because it involved the claim of an individual defrauded into making wire transfers to the account of the bank's customer, and this court dismissed plaintiff's negligence claim, holding that the bank defendant had no duty of care to protect plaintiff from being defrauded by the bank's customer. See <u>Tzaras</u>, <u>supra</u>, 2003 WL 470611, at *6, 2003 U.S. Dist. Lexis 2550, at *17-18 ("Because [defendant bank] owed no duty of care to plaintiff, plaintiff cannot, as matter of New York common law, make out a cognizable claim for negligence.").

## POINT III

### PLAINTIFFS LACK STANDING TO ASSERT
### CLAIMS AGAINST WELLS FARGO

Standing is a threshold requirement in all cases. Plaintiffs without standing may not litigate their claims in federal court. See <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 117 (2d Cir. 1991).

Fatal to all their causes of action, plaintiffs lack standing because they are not customers of Wells Fargo and thus are not in privity with it. As non-customers, Wells Fargo owes them no duty to protect them from fraud committed by a bank customer. See, e.g., <u>Tzaras</u>, <u>supra</u>, 2003 WL 470611, at *5-6, 2003 U.S. Dist. LEXIS 2550, at *18-19;

Point IIB, <u>supra</u>. Further, as plaintiffs recognize, they have no contract with Wells Fargo, and thus no standing to assert a breach of contract claim. And finally, plaintiffs lack standing to assert a UCC claim pursuant to UCC § 4-A-207 – assuming *arguendo* they could point to a breach by Wells Fargo – because they may only assert a claim against the bank they dealt with on the wire transfer, which was not Wells Fargo. <u>See</u> <u>Grain Traders</u>, 160 F.3d at 102; <u>Frankel-Ross v. Congregation Ohr Hatalmud</u>, 2016 WL 4939074, at \*3, 2016 U.S. Dist. LEXIS 128342, at \*10 (S.D.N.Y. Sep. 13, 2016) (plaintiff who authorized a fraudulent wire has no privity with the beneficiary bank and therefore may not maintain an action against it pursuant to UCC § 4-A-207).

Accordingly, plaintiffs' claims must be dismissed because they lack standing to assert any of them against Wells Fargo. <u>See</u> <u>Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.</u>, 2011 WL 2532914, 2011 U.S. Dist. LEXIS 67871, at \*11 (E.D.N.Y. June 23, 2011), *aff'd* 457 Fed. Appx. 40, 44, 2012 WL 232969, at \*3 (2d Cir. 2012) (denying motion for reconsideration where plaintiff's claims were dismissed for lack of standing).

In sum, because plaintiffs lack standing to assert claims against Wells Fargo, their complaint must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the complaint against Wells Fargo should

be dismissed.

Dated: New York, New York
      August 15, 2019

                             ZEICHNER ELLMAN & KRAUSE LLP

                         By: _____

                             Stephen F. Ellman
                             Ronald M. Neumann
                             Nicholas A. Savino
                             Attorneys for Defendant
                               Wells Fargo Bank, N.A.
                               sued herein as Wells Fargo Bank PLC
                             1211 Avenue of the Americas
                             New York, New York 10036
                             (212) 223-0400