UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLTON INTERNATIONAL
EXPRESS and WELLTON EXPRESS
INC.,
                              Plaintiffs,

                -v-

BANK OF CHINA (HONG KONG), *et al.*,
                              Defendants.

19-CV-6834 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Wellton International Express ("Wellton International") and Wellton Express

Inc. ("Wellton Express") bring this action against Defendants Wells Fargo Bank PLC[1] ("Wells

Fargo"), JP Morgan Chase Bank ("JP Morgan") and Bank of China (Hong Kong) ("BOC")

alleging harm regarding a wire transfer payment that was erroneously made to a fraudster.  (*See*

Dkt. No. 1-1 ("Compl.").)  The case was removed to federal court on the basis of this Court's

diversity jurisdiction on July 23, 2019.  (Dkt. No. 1.)  Each defendant has now moved to dismiss

Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See*

Dkt. Nos. 11, 14, 24.)  For the reasons that follow, Wells Fargo's and JP Morgan's motions to

dismiss are granted.  BOC's motion to dismiss is granted in part.

I.      **Background**

Wellton International and Wellton Express are freight forwarders that work together

regularly to ship goods from China to the United States.  (Compl. ¶¶ 1–2.)  Wellton International

maintains a BOC bank account from which it regularly makes payments to Wellton Express's JP

---

[1] The correct name of this defendant bank is Wells Fargo Bank, N.A. (*See* Dkt. No. 13 at
1 n.1.)

Morgan bank account.  (Compl. ¶ 2.)  In January 2019, Wellton International owed Wellton

Express $152,357.61 for services rendered, and Wellton Express requested payment.  (Compl.

¶ 3.)  Subsequently, Wellton International received a fraudulent email from an unknown

computer hacker pretending to be from Wellton Express requesting that Wellton International

wire the money owed to a Wells Fargo bank account.  (*Id.*)  As a result, Wellton International

erroneously wired the money from its BOC bank account to the Wells Fargo bank account

indicated in the fraudulent email.  (*See id.*)  JP Morgan was an intermediary bank in this transfer.

(*Id.*)  Wellton Express received a phone call from Wells Fargo to verify the wire transfer.

(Compl. ¶ 4.)  Wellton Express advised Wells Fargo that the transfer was fraudulent because it

did not have a bank account at Wells Fargo.  (*Id.*)  Wells Fargo indicated that it would place a

hold on the transfer until it was verified.  (*Id.*)  When Wellton Express apprised Wellton

International that the wire information provided to it was fraudulent, Wellton International

notified BOC, JP Morgan, and Wells Fargo that the money should not be transferred to the Wells

Fargo bank account.  (Compl. ¶ 5.)  Despite these warnings, the money was transferred into the

Wells Fargo bank account.  (*Id.*)  Upon transfer, the unknown fraudsters withdrew the money

and closed the account.  (*Id.*)

## II.    Legal Standard

A district court properly dismisses an action under Rule 12(b)(1) if the court "lacks the

statutory or constitutional power to adjudicate it . . . such as when . . . the plaintiff lacks

constitutional standing to bring the action."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,*

*S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks and citations omitted).

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In

considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a

court must accept as true all the material factual allegations contained in the complaint, but a court is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, a court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.   Discussion

"Article 4-A of the UCC governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998).[2] A "funds transfer" is defined as "the series of transactions, beginning with the

---

[2] In their complaint, Plaintiffs do not specify which causes of action they intend to assert against Defendants. (*See* Compl.) Plaintiffs' oppositions to Defendants' motions to dismiss concede that they do not have a common law breach of contract or negligence cause of action and that this case is governed by the UCC. (Dkt. No. 19 at 14; Dkt. No. 20 at 9.) Accordingly,

originator's payment order, made for the purpose of making payment to the beneficiary of the order." N.Y. U.C.C. § 4-A-104(1). A "payment order" is "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." *Id.* § 4-A-103(1)(a).

As for the parties to this transaction, the "sender" is the person giving the instruction to the receiving bank. *Id.* § 4-A-103(1)(e). And the "originator" is the sender of the first payment order in a funds transfer. *Id.* § 4-A-104(3). Accordingly, Wellton International is both the sender and the originator in this case. BOC is, then, the originator's bank. *See id.* § 4-A-104(4).

The "beneficiary" is the person to be paid by the beneficiary's bank, *id.* § 4-A-103(b), and the "beneficiary's bank" is the "bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order" *id.* § 4-A-103(c). Accordingly, the beneficiary is the John Doe who owned the Wells Fargo account, and Wells Fargo is the beneficiary bank.

Finally, the "intermediate bank" is "a receiving bank other than the originator's bank or beneficiary's bank." *Id.* § 4-A-104(2). Here, the intermediate bank is JP Morgan.

### A.     Wells Fargo's and JP Morgan's Motions to Dismiss

As an initial matter, JP Morgan argues that Wellton Express lacks constitutional standing to sue. "Constitutional standing requires (1) an injury-in-fact — that is, an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) that there is a causal connection between the injury and the conduct of which the plaintiff complains, and (3) that it is likely that the injury will be redressed

---

this Court proceeds under the understanding that this case has been brought under Article 4-A of the UCC.

by a favorable decision." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Specifically, JP Morgan argues that because the funds at issue never belonged to Wellton Express, it cannot allege that it suffered such an injury-in-fact.  However, the obvious injury here is that Wellton Express was deprived of money that was clearly intended for it.  And while JP Morgan argues that there is no causal connection between that harm and JP Morgan's conduct because JP Morgan was required under the UCC to execute an authorized payment order, that is a merits question rather than a standing question.  Wellton Express alleges that had the defendants not executed the payment order, it would have suffered no harm.  That is sufficient for the purposes of the causation requirement.  For both of these reasons, this Court finds that Wellton Express has Article III standing to proceed.

Plaintiffs identify in their opposition two separate sections of Article 4-A of the UCC that they deem applicable to this action — Sec. 4-A-202(2) and Sec. 4-A-207.  (*See, e.g.*, Dkt. No. 20 at 4–7.)  However, Plaintiffs' claims against Wells Fargo and JP Morgan fail under both of these provisions.

First, Sec. 4-A-202(2) does not apply to this case.  Sec. 4-A-202(2) is an exception to the default rule that the bank bears the loss of any unauthorized funds transfer.  *See Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 640 (S.D.N.Y. 2003) (citations omitted).  Where a bank and its customer agree on a security procedure, the bank is not held liable for an unauthorized transfer if (1) the security procedure is commercially reasonable and (2) the bank accepted the payment order in good faith and in compliance with the security procedure.  *Id.* at 640–41 (citations omitted).  Here, the transfer was unequivocally authorized — Plaintiffs explicitly allege in the complaint that Wellton International sent the wire transfer.  (*See* Compl. ¶ 3); *see also* N.Y.

U.C.C. § 4-A-202(1).  And because Plaintiffs authorized the transfer, even erroneously, no cause

of action lies.  *See Blum v. Citibank, N.A.*, 81 N.Y.S.3d 51, 52 (2d Dep't 2018) (finding no

legally cognizable cause of action where the plaintiff authorized transfers based on "fraudulent

misrepresentations by [a] third party.")  Even if Sec. 4-A-202(2) did apply, Plaintiffs have not

alleged (1) the existence of any security procedure, (2) whether that security procedure is

commercially reasonable, or (3) whether the bank accepted the payment order in good faith and

in compliance with the security procedure.  Accordingly, the complaint does not state a claim

under Sec. 4-A-202(2).

Second, neither Wells Fargo nor JP Morgan can be held liable under Sec. 4-A-207.

Wells Fargo argues that neither plaintiff has a cause of action to sue under this provision because

they are not in privity with Wells Fargo.  (*See* Dkt. No. 13 at 18.)[3]  This argument applies with

equal force to JP Morgan.  Sec. 4-A-402 "provides the remedial scheme" for violations of Sec. 4-

A-207.  *Frankel-Ross v. Congregation Ohr Hatalmud*, No. 15 Civ. 6566, 2016 WL 4939074, at

*3 (S.D.N.Y. Sept. 13, 2016).  And Sec. 4-A-402 "incorporate[s] a 'privity' requirement . . . so

that [the remedy] applies only between the parties to a particular payment order and not to the

parties to the funds transfer as a whole."  *Grain Traders, Inc.*, 160 F.3d at 101.  As the

beneficiary bank, Wells Fargo was not a party to the payment order.  Neither was JP Morgan, as

---

[3] Wells Fargo's memorandum of law in support of its motion to dismiss packages this as a standing argument.  However, this argument sounds not in constitutional standing, but in the doctrine sometimes referred to as "statutory standing."  Constitutional standing refers to the Article III requirement that parties suing in federal court establish there exists a case or controversy for adjudication.  *Am. Psychiatric Ass'n*, 821 F.3d at 358.  In contrast, "statutory standing" simply refers to whether a plaintiff has a cause of action under the statute in question.  *Id.* at 359.  The Supreme Court has clarified that this inquiry is not a standing inquiry at all because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (internal quotation marks and citations omitted).

the intermediary bank.  The payment order at issue in this case was between Wellton

International and BOC.  (*See* Compl. ¶ 3.)  Because there is a lack of privity between Plaintiffs

and Wells Fargo, and between Plaintiffs and JP Morgan, Plaintiffs cannot maintain a cause of

action against either defendant under Sec. 4-A-207.  *See Frankel-Ross*, 2016 WL 4939074, at *3.

Accordingly, all claims against Wells Fargo and JP Morgan are hereby dismissed.[4]

### B.      BOC's Motion to Dismiss

BOC asserts that the UCC does not apply to it but argues that Plaintiffs claims fail as a

matter of both the UCC and Hong Kong law.  In a diversity-jurisdiction case such as this one, the

Court is obliged to apply the choice-of-law rules of the forum state.  *See Gilbert v. Seton Hall

Univ.*, 332 F.3d 105, 109 (2d Cir. 2013).  And New York's Article 4-A provides that "the rights

and obligations between the sender of a payment order and the receiving bank are governed by

the law of the jurisdiction where the receiving bank is located."  N.Y. U.C.C. § 4-A-507(1)(a).

Because BOC is located in Hong Kong, the law of Hong Kong applies to this dispute.  Plaintiffs

do not mount a substantive response to the choice of law issue.  Instead they simply argue in the

alternative that the complaint is sufficient under Hong Kong law.  (*See* Dkt. No. 29 at 10–13.)

Accordingly, to the extent that Plaintiffs bring claims against BOC under the UCC, those claims

are dismissed.

---

[4] Plaintiffs also make the curious argument that Defendants' motions to dismiss are "premature" because they were served "before any discovery was requested and/or provided," and that Defendants' arguments are "more in line with a motion for summary judgment."  (*See, e.g.*, Dkt. No. 19 at 8–9.)  It is clear that they are not.  Motions to dismiss are routinely filed before the plaintiff has access to discovery.  However, it is still incumbent on Plaintiff to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Because "discovery is not a fishing expedition for Plaintiffs to try to obtain information to try to create claims that do not already exist . . . [,] Plaintiffs need to have adequate information in their possession at the time they file their complaint to substantiate the claim against a motion to dismiss."  *Bruno v. Zimmer, Inc.*, No. 15 Civ. 6129, 2016 WL 4507004, at *5 (E.D.N.Y. Aug. 26, 2016).

### C.     Forum Non Conveniens

Because what is left of this lawsuit is between two Plaintiffs (one of which is based in Hong Kong) and a Hong Kong-based defendant under Hong Kong law, this Court is inclined to dismiss the case *sua sponte* under the doctrine of forum non conveniens.  *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) (discussing courts' inherent authority to dismiss an action on the grounds of forum non conveniens).  However, because BOC did not move to dismiss on this ground, the Court will give the parties the opportunity to brief the issue.

## IV.     Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendant JP Morgan Chase Bank and Defendant Wells Fargo PLC are GRANTED.  The motion to dismiss filed by Defendant Bank of China (Hong Kong) is GRANTED in part.

Plaintiffs shall, on or before April 24, 2020, show cause as to why their complaint should not be dismissed on forum non conveniens grounds.  Defendant Bank of China (Hong Kong) shall respond on or before May 8, 2020.

The Clerk of Court is directed to close the motions at Docket Numbers 11, 14 and 24, and terminate Defendants JP Morgan Chase Bank and Wells Fargo PLC as parties to this case.

SO ORDERED.

Dated: April 3, 2020
       New York, New York

_____
                    J. PAUL OETKEN
                    United States District Judge